UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ARNOLDO MELENDEZ,**

　　　**Petitioner,**

**v.**　　　　　　　　　　　　　　　**Case No. 8:19-cv-1905-MSS-TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

　　　**Respondent.**

_____/

**O R D E R**

Melendez petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for trafficking in illegal drugs, conspiracy to traffic in illegal drugs, and possession of cannabis. (Doc. 1 at 1) The Respondent responds and submits the relevant state court record (Docs. 10 and 10-1), and Melendez replies. (Docs. 11 and 13) After reviewing the pleadings and the state court record, the Court **DENIES** the petition.

**PROCEDURAL HISTORY**

A jury found Melendez guilty of the crimes (Doc. 10-2 at 179–80), and the trial court sentenced Melendez to two concurrent fifteen-year sentences for the trafficking and conspiracy convictions and time served for the cannabis possession conviction. (Doc. 10-2 at 192–99) Melendez appealed but voluntarily dismissed his appeal after appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Doc. 10-2 at 220–22, 224) Melendez moved for post-conviction relief, the post-conviction court denied relief after an evidentiary hearing (Docs. 10-3 at 164–84 and 10-5 at 215–28), and the state appellate court

1

affirmed in a decision without a written opinion. (Doc. 10-5 at 362) Melendez's federal petition follows.

## FACTS

A confidential informant arranged for an undercover detective to purchase one hundred oxycodone pills from a Hispanic male named "A.J." (Doc. 10-2 at 64–65, 70) The detective and the confidential informant drove to a parking lot and called "A.J." on his telephone. (Doc. 10-2 at 65–67) After the call concluded, the confidential informant exited the car, and Melendez parked his truck next to the detective's car. (Doc. 10-2 at 67) Melendez exited his truck, lifted the hood, and poured water into the radiator. (Doc. 10-2 at 68) The confidential informant greeted Melendez, introduced the detective, and walked away. (Doc. 10-2 at 68–69)

The detective told Melendez, "[H]ey, jump in so we can take care of this." (Doc. 10-2 at 69) Melendez told the detective to wait, looked away, and yelled to someone, "[H]ey, come over here." (Doc. 10-2 at 69) Christopher Simpson walked up, and the detective heard Melendez tell Simpson, "[H]ey, look, this is the guy. Go ahead and give him the pills." (Doc. 10-2 at 70) Simpson entered the detective's car and gave the detective a pill bottle. (Doc. 10-2 at 70) The detective opened the pill bottle, asked if the bottle contained all the pills, and flashed some money. (Doc. 10-2 at 70) After Simpson confirmed that all the pills were in the bottle, the detective signaled to a team of police officers who arrested Melendez and Simpson. (Doc. 10-2 at 70)

The detective had agreed to purchase one hundred pills for twelve dollars each. (Doc. 10-2 at 70–71) During Melendez's arrest, police found marijuana on Melendez. (Doc. 10-2 at 75, 102–03) The detective counted 102 pills in the bottle. (Doc. 10-2 at 78) At trial, the

prosecution introduced into evidence a video recording of the drug sale, the bottle of pills, and the marijuana. (Doc.10-2 at 71–77) When asked on cross-examination whether the video depicted Melendez or recorded his voice, the detective responded, "It caught more the CI, I think." (Doc. 10-2 at 80) Also, the detective agreed that he never received money for the pills. (Doc. 10-2 at 80)

Simpson pleaded guilty and testified for the prosecution but denied receiving any benefit from the prosecution for his testimony. (Doc. 10-2 at 82, 94) Simpson had worked for Melendez for about a month and had stayed with him for a few days before his arrest. (Doc. 10-2 at 82–84) On the day of his arrest, Simpson spent time at Melendez's home and saw Melendez step out of the room to answer a telephone call. (Doc. 10-2 at 86) Melendez returned and told Simpson that they needed to go to the grocery store. (Doc. 10-2 at 86)

Simpson thought that he and Melendez were going to shop for groceries for Melendez's family. (Doc. 10-2 at 87) When Melendez and Simpson parked at the grocery store, Melendez gave Simpson a bottle of pills and directed him to give the bottle to a male in a gray Cadillac parked nearby. (Doc. 10-2 at 87–88) Simpson told Melendez, "I do not want anything to do with that," and Melendez told Simpson that he would not have a place to stay that night. (Doc. 10-2 at 87) Melendez told Simpson not to accept any money because Melendez would take care of the money. (Doc. 10-2 at 88) Simpson reluctantly took the pills to the male in the Cadillac. (Doc. 10-2 at 88)

Simpson started walking toward the Cadillac, and Melendez moved his car next to the Cadillac. (Doc. 10-2 at 89) Melendez exited his car and motioned to Simpson. (Doc. 10-2 at 89) Simpson entered the Cadillac, sat down in the driver's seat, and gave the male the bottle of pills. (Doc. 10-2 at 89–90) The male began to count the pills in the bottle, and police arrested

Simpson. (Doc. 10-2 at 90–91) Police placed Simpson in a van with Melendez, and Melendez told Simpson that Simpson "better take the blame," and Melendez "was not involved with it." (Doc. 10-2 at 92) Simpson responded that "[he] could not do that because that was not the truth and [he] was not going to lie." (Doc. 10-2 at 92)

On direct examination, when asked whether Melendez had a prescription for pain pills, Simpson responded that he knew that Melendez suffered from back pain but denied knowing if Melendez had a prescription for pain pills. (Doc. 10-2 at 85) On cross-examination, the defense impeached Simpson with a prior inconsistent statement from his deposition. Simpson had testified that he knew that Melendez had a prescription for his back pain. (Doc. 10-2 at 96–97)

A chemist analyzed two of the pills in the bottle and determined that the pills contained oxycodone. (Doc. 10-2 at 107) The remaining pills in the bottle shared the same shape, size, color, and markings as the pills analyzed by the chemist. (Doc. 10-2 at 107)

Melendez, a convicted felon, testified in his own defense. (Doc. 10-2 at 121–22) He testified that he dropped Simpson at a store named Sweet Bay and drove across the street to a supermarket. (Doc. 10-2 at 115) In the supermarket parking lot, a man standing next to a car with the hood lifted waved at Melendez, and Melendez parked his car next to him. (Doc. 10-2 at 115) Melendez recognized the man because Simpson had invited him to Melendez's home before. (Doc. 10-2 at 115) The man told Melendez that his car had overheated. (Doc. 10-2 at 116) Melendez did not know the man's name but offered the man a can to get some water. (Doc. 10-2 at 116–17) While Melendez grabbed the can from his car, Melendez saw Simpson walk towards the man's car and enter the man's car. (Doc. 10-2 at 116–17) Police then arrested Melendez and Simpson. (Doc. 10-2 at 117) Melendez denied giving Simpson

any pills and denied telling Simpson to give pills to the male. (Doc. 10-2 at 118–20, 124) Melendez admitted that he had a prescription for oxycodone but testified that he kept his pills in a desk at his office. (Doc. 10-2 at 119, 122)

## STANDARDS OF REVIEW

### AEDPA

Because Melendez filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529

U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Melendez asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"[T]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The state appellate court affirmed in a decision without a written opinion the post-conviction court's order denying Melendez relief. (Doc. 10-5 at 360) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Because the post-conviction court recognized that *Strickland* governed the claims (Docs. 10-3 at 166–67 and 10-5 at 217), Melendez cannot meet the "contrary to" test in

Section 2254(d). Melendez instead must show that the state court either unreasonably applied *Strickland* or unreasonably determined a fact.

## ANALYSIS

**Ground One**

Melendez asserts that trial counsel was ineffective for misadvising him to reject the prosecution's plea offers. (Doc. 1 at 5) The post-conviction court denied the claim as follows (Doc. 10-5 at 218–19) (state court record citations omitted):

> . . . Defendant alleges trial counsel was ineffective for failing to convey a three-year plea offer to Defendant, and for misadvising him to reject all plea offers. Defendant contends that prior to trial the State offered a three-year plea offer. Defendant contends that his counsel failed to inform him of this offer until the day of trial. Defendant contends that once his counsel informed him of the offer she implored him not to accept any plea deals because she was certain she could win at trial. Defendant contends that had his counsel made him aware of the plea offer earlier and not misadvised him to reject the offer he would have accepted it.
>
> After reviewing the allegations, the court file, and the record, the Court found that Defendant had presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's allegations. In its September 6, 2016 Response, the State conceded that Defendant was entitled to an evidentiary hearing to resolve [the claim]. Accordingly, the Court granted an evidentiary hearing on [the claim].
>
> At the evidentiary hearing, Defendant testified that his trial counsel, Tiffany Craig, told him that after reviewing his case she felt he had committed no wrongdoing and that they would be victorious at trial. Defendant testified that Ms. Craig told him he made the right decision in choosing not to take the offer.
>
> The State subsequently called Ms. Craig to testify. Ms. Craig testified that she conveyed the three-year offer to Defendant. Ms. Craig testified that Defendant rejected the offer. Ms. Craig further testified that the Office of Regional Counsel uses a system called Defender Data and that system holds her notes from each court date with Defendant. Ms. Craig testified that

her notes from November 29, 2011 reflect that Defendant rejected the three-year offer from the State. She testified that on December 6, 2011 she had a follow-up conversation with Defendant regarding the plea offer. Ms. Craig testified that she never told Defendant he did "no wrongdoing" [or] that they would be "victorious."

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The Court finds that this issue rests on a determination of credibility. The Court finds Ms. Craig's testimony more credible than Defendant's testimony. Based on Ms. Craig's credible testimony, the Court finds that Ms. Craig discussed the plea offer with Defendant at least two weeks prior to Defendant's trial. The Court finds that Defendant rejected the plea offer from the State. Additionally, Ms. Craig met with Defendant a second time to discuss the plea offer even after Defendant initially rejected it. The Court finds that Ms. Craig never promised Defendant they would be victorious at trial. As such, the Court finds that Defendant knew about the plea offer from the State well in advance of trial and decided to reject the offer of his own volition. As such, the Court finds that Defendant cannot satisfy the deficiency prong of *Strickland*. Accordingly, [the claim] must be denied.

The post-conviction court found trial counsel more credible than Melendez at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem v. GDCP Warden*, 995 F.3d 895, 929 (11th Cir. 2021) ("'Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.'") (citation omitted).

At the evidentiary hearing, trial counsel testified that she communicated the plea offer to Melendez as follows (Doc. 10-5 at 262–65):

| | |
|---|---|
| [Prosecutor:] | Okay. . . [S]pecifically address[ing] trial counsel's ineffectiveness for failing to convey a three-year plea offer to Mr. Melendez and for misadvising him to reject all plea offers. I'm reading from the order. What was the mandatory minimum that Mr. Melendez was facing? |
| [Trial counsel:] | Three years. |
| [Prosecutor:] | Okay. To the best of your knowledge and recollection, did he actually score above the three years? |
| [Trial counsel:] | He did. |
| [Prosecutor:] | At any time, did the Assistant State Attorney who you may recall would have been me, did I ever make an offer [ ] below the guidelines of just the three-year mandatory minimum? |
| [Trial counsel:] | You did. |
| [Prosecutor:] | Did I convey that offer to you? |
| [Trial counsel:] | You did. |
| [Prosecutor:] | Did I convey that offer on the record? |
| [Trial counsel:] | You would have, yes. |
| [Prosecutor:] | Okay. Did you have a conversation with Mr. Melendez about that? |
| [Trial counsel:] | I did. |
| [Prosecutor:] | Okay. And what, if anything, came of that conversation? |
| [Trial counsel:] | Mr. Melendez rejected that offer. |
| [Prosecutor:] | Okay. Do you have a file in front of you? |
| [Trial counsel:] | I do. |

| | |
|---|---|
| [Prosecutor:] | Okay. And do you have any notes or anything to that effect regarding your discussion with Mr. Melendez about plea negotiations or plea offers? |
| [Trial counsel:] | Yes. As Regional Counsel, we used a system called Defender Data in which we notate court dates we have with our clients. We can write notes in it about what happened in court or what happened when clients come in. |
| | And on that pretrial date, November 29th of 2011, I wrote that [the] client rejected the offer of the 36-month Florida State minimum mandatory, a below-guideline offer. |
| [Prosecutor:] | And this pretrial [hearing] was around the holidays, so we didn't actually pick a jury until a couple of weeks later, on or about December the 12th of 2011, correct? |
| [Trial counsel:] | That's correct. |
| [Prosecutor:] | Okay. Were there any discussions that you and Mr. Melendez [had] if they're indicated in your file between the 29th and the 12th of any sort [about] plea negotiations or [the] offer? |
| [Trial counsel:] | Yes. Mr. Melendez then came into my office on December 6th of 2011. And we had an office conference in which we would have discussed the merits of his case and the plea offer again at that time. |
| [Prosecutor:] | And during that meeting on December the 6th, did you go over the discovery with him, all of the evidence and exhibits that you believed would be presented at trial the following week? |
| [Trial counsel:] | Yes. That would be my course to go over all the evidence and everything with my client[.] [G]o over, like I said, the plea |

|                    | offer, you know, and discuss with him what would be in his best interest and how to proceed. |
|--------------------|----------------------------------------------|
| [Prosecutor:]      | Did you ever tell him that he did no, and I quote, wrongdoing? |
| [Trial counsel:]   | That wouldn't have come out of my mouth. |
| [Prosecutor:]      | Did you ever tell him, and I quote, we would be victorious? |
| [Trial counsel:]   | I doubt I would have said that either. |

Because the post-conviction court accurately summarized trial counsel's testimony at the evidentiary hearing and Melendez fails to come forward with clear and convincing evidence to rebut the post-conviction court's credibility determination, the post-conviction court did not unreasonably deny the claim. 28 U.S.C § 2254(d)(2), (e)(1). *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). *Jenkins v. Comm'r, Ala. Dep't Corrs.*, 963 F.3d 1248, 1272 (11th Cir. 2020) ("The credibility of a witness is a question of fact entitled to a presumption of correctness under AEDPA. 'In the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court's credibility determinations.'") (citations omitted).

Ground One is **DENIED**.[1]

---

[1] In his reply (Docs. 11 at 5–6 and 13 at 5–6), Melendez asserts that "trial counsel failed to inform [him] that if found guilty, the [trial] court would be prohibited from sentencing him in excess of the three-year plea offer, for exercising his constitutional right to a trial." He contends that: "To do so was vindictive on behalf of the court, and went unchallenged by counsel." (Docs. 11 at 6 and 13 at 6) Because Melendez raises this claim for the first time on reply, he waives the claim. Also, because Melendez fails to allege facts demonstrating that

**Ground Two**

Melendez asserts that trial counsel was ineffective for not securing the assistance of an interpreter for Melendez during trial. (Doc. 1 at 7) The post-conviction court denied the claim as follows (Doc. 10-5 at 220–22) (state court record citations omitted):

> . . . Defendant alleges trial counsel was ineffective for depriving Defendant of an interpreter at trial. Defendant contends that growing up he primarily communicated in Spanish. Defendant contends that he has a learning disability and his formal education does not extend beyond the sixth grade. Defendant contends that he was able to communicate with his attorney in English, but that he only understood very simple terms. Defendant contends that he asked his attorney to secure an interpreter for trial as the issues discussed at trial were beyond his comprehension in English. Defendant contends that his counsel was adamant that an interpreter was not necessary.
>
> After reviewing the allegations, the court file, and the record, the Court found that Defendant had presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's allegations. In its September 6, 2016 Response, the State conceded that Defendant was entitled to an evidentiary hearing to resolve [the claim]. Accordingly, the Court granted an evidentiary hearing on [the claim].
>
> At the evidentiary hearing, Defendant testified that he does his best to communicate in English, however, he has always had some "problems or struggles with it, specifically understanding it." Defendant testified that he requested a Spanish interpreter ever since Ms. Craig took over his case.
>
> On cross-examination, Defendant admitted that he never asked for an interpreter while in court. Defendant admitted that he was able to use his broken English to fire his previous post-conviction attorney. Defendant further testified that he did file a number of pleadings in this case in English, but that he used a Spanish-English dictionary and had someone helping him with his paperwork.

---

"the totality of the circumstances [gave] rise to a presumption of vindictiveness," he fails to state a claim. *Williams v. State*, 225 So. 3d 349, 356 (Fla. 3d DCA 2017).

The State subsequently called Ms. Craig to testify. Ms. Craig testified that during her entire approximately six-month representation of Defendant she communicated with him exclusively in English. Ms. Craig testified that Defendant never indicated to her that he was uncomfortable communicating in English or that he felt he needed an interpreter. Ms. Craig testified that if Spanish is her client's first language she always inquires whether they require an interpreter. She testified that if any of her clients request an interpreter she has no problem getting one. Ms. Craig testified, however, that Defendant never requested the services of an interpreter. She further testified that she communicated with Defendant fine. Ms. Craig testified that Defendant testified at trial in English.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The Court finds that this issue rests on a determination of credibility. The Court finds Ms. Craig's testimony more credible than Defendant's testimony. Based on Ms. Craig's credible testimony Defendant never requested the assistance of an interpreter. Additionally, Ms. Craig was able to communicate with Defendant during the entirety of her representation of him. The Court finds that Defendant has communicated orally and in writing throughout the time leading up to his trial and during trial in English. As such, the Court finds that Defendant cannot satisfy the deficiency prong of *Strickland*. Accordingly, [the claim] must be denied.

The post-conviction court found trial counsel more credible than Melendez at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929.

At the evidentiary hearing, trial counsel testified that she communicated with Melendez in English and Melendez never asked for an interpreter, as follows (Doc. 10-5 at 261–62):

[Prosecutor:]        Okay. And during your six months or so of representation of Mr. Melendez, how did you communicate? And by how, I mean in what language?

[Trial counsel:]        The only language I speak is English.

[Prosecutor:]        And during your discussions with Mr. Melendez — let me rephrase that. Did you have discussions with him in the courtroom?

[Trial counsel:]        I did.

[Prosecutor:]        Did you have discussions with him outside of the courtroom or in your office?

[Trial counsel:]        I did.

[Prosecutor:]        At any time, did Mr. Melendez indicate to you that he was not comfortable speaking in English and preferred the services of a Spanish-speaking interpreter?

[Trial counsel:]        No, not at all.

[Prosecutor:]        During the times that you were in court with him from June, again, through the trial, which ended with his sentencing on December 15th of 2011, did Mr. Melendez ever request the services of a court staff interpreter for any hearings?

[Trial counsel:]        No. If any of my clients request the assistance of an interpreter, I have no problem with doing that. I communicated with Mr. Melendez fine. And like I said, the only language I speak is English. He never requested [from] me [ ] the services of an interpreter. And even with some of my clients [for whom] Spanish is their first language, I always inquire. So that was never an issue.

Also, at the evidentiary hearing, trial counsel testified that Melendez exercised his right to testify at trial and testified in English. (Doc. 10-5 at 272–73) Transcripts confirm that Melendez testified at trial in English. (Doc. 10-2 at 110–29) At the evidentiary hearing, on cross-examination, Melendez admitted that he never asked for an interpreter in the courtroom at a pretrial hearing, during trial, or at sentencing. (Doc. 10-2 at 252)

Because the post-conviction court accurately summarized trial counsel's testimony at the evidentiary hearing and Melendez fails to come forward with clear and convincing evidence to rebut the post-conviction court's credibility determination, the post-conviction court did not unreasonably deny the claim. 28 U.S.C § 2254(d)(2), (e)(1). *Jenkins*, 963 F.3d at 1272.

Ground Two is **DENIED**.

**Ground Three**

Melendez asserts that trial counsel was ineffective for not objecting to comments by the trial judge at sentencing and for not moving to recuse the trial judge because of those comments. (Doc. 1 at 9) The post-conviction court denied the claim as follows (Doc. 10-5 at 222–23) (state court record citations omitted):

> . . . Defendant alleges trial counsel was ineffective for fail[ing] to object to the sentencing judge's bias against Defendant and for failing to move to disqualify the judge. Defendant contends that at the sentencing hearing he told the sentencing judge multiple times that he did not commit the crimes. Defendant contends that the sentencing judge then used Defendant's lack of remorse against him during sentencing.
>
> After reviewing the allegations, the court file, and the record, the Court found that Defendant had presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's allegations. In its September 6, 2016 Response, the State argued that based on Defendant's prior record in conjunction with the charges he faced in this case the

16

sentence imposed by the trial judge did not rise to the level of bias. The Court found, however, that Defendant's claims were still not conclusively refuted by the record. Accordingly, the Court granted an evidentiary hearing on [the claim].

At the evidentiary hearing, Defendant testified that he asked Ms. Craig several times to move to disqualify the trial judge. Defendant testified that he had the impression the judge was "already set" in sending him to prison. Defendant further testified that the trial judge commented that he "was going to have some of the best doctors in prison that were going to look after [him]."

The State subsequently called Ms. Craig to testify. Ms. Craig testified that there was no legal basis or reason to move to disqualify the trial judge in this case. Ms. Craig testified that nothing occurred during trial or sentencing that caused her to feel that the judge was bias against Defendant.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The Court first notes that trial counsel cannot be found deficient for failure to make a meritless argument. *See Schoenwetter v. State*, 46 So. 3d 535 (Fla. 2010). The Court finds that based on Ms. Craig's credible testimony she had no legal basis to move to disqualify the trial judge in this case. The Court further notes that after additional review of the sentencing hearing transcript in this case, the Court finds no comment made by the trial judge that Defendant would be treated by the best doctors in prison. As such, Defendant cannot satisfy the deficiency prong of *Strickland*. Accordingly, [the claim] must be denied.

The post-conviction court found trial counsel credible at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. Also, whether trial counsel could have successfully moved to disqualify the sentencing judge for bias is an issue of state law, and a state court's determination of state

17

law receives deference in federal court. *Hendrix v. Sec'y, Fla. Dep't Corrs.*, 527 F.3d 1149, 1153 (11th Cir. 2008) ("To the extent that Hendrix argues recusal or disqualification was required under Florida statutory law or its Code of Judicial Conduct, the Florida Supreme Court held to the contrary, and we are bound by its interpretation of state law.") (citations omitted).

Under Florida law, a party may disqualify a judge if "the party reasonably fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330(e)(1). "'Florida's courts have frequently held that a judge who has made statements indicating that he or she has predetermined the appropriate sentence is disqualified from presiding over the entire proceeding.'" *Dorch v. State*, 952 So. 2d 1244, 1245 (Fla. 3d DCA 2007) (quoting *Konior v. State*, 884 So. 2d 334, 335 (Fla. 2d DCA 2004)). *See also Thompson v. State*, 990 So. 2d 482, 490 (Fla. 2008) ("[J]udicial comments revealing a determination to rule a particular way prior to hearing any evidence or argument have been found to be sufficient grounds for disqualification.").

At the post-conviction evidentiary hearing, trial counsel testified that she did not either hear any biased comment or observe any biased behavior by the sentencing judge as follows (Doc. 10-5 at 268):

> [Prosecutor:]   . . . [Melendez] alleges that trial counsel was ineffective for failing to object to Judge Padgett's bias against Mr. Melendez and for failing to move to disqualify Judge Padgett. Was there any legal basis or any reason that you had to disqualify or move to recuse Judge Padgett.
>
> [Trial counsel:]   No.

| | |
|---|---|
| [Prosecutor:] | Judge Padgett heard the trial and ultimately sentenced Mr. Melendez, correct? |
| [Trial counsel:] | That's correct. |
| [Prosecutor:] | Okay. And he sentenced him to fifteen years Florida state prison upon the request of the state attorney, the assistant state attorney assigned to the case, correct? |
| [Trial counsel:] | He was sentenced to fifteen years. |
| [Prosecutor:] | Okay. Other than not being happy with the sentence of fifteen years, was there anything that happened at sentencing or even during the trial that would have caused you to feel concerned that Judge Padgett had any bias against Mr. Melendez? |
| [Trial counsel:] | No, because I would have notated it. |

At sentencing, Melendez's brother, Richard Cavaso, spoke about Melendez's back injury, and the sentencing judge responded as follows (Doc. 10-2 at 184–85):

| | |
|---|---|
| [Cavaso:] | Good morning, Your Honor. I am not too adverse of what the situation is. I just want to speak on his medical condition. He has a serious back injury. He has prescribed [ ] medication which I guess — I don't know what he was prescribed[,] Oxycotin[,] [by] the doctors. He has a hernia in his stomach. I believe he has a tumor in the right side of the lung which he was on supervision by his physician. I just wanted to bring that out[,] so that way[,] whatever the determination on your behalf is[,] he continues to seek his medical, I don't know how you say it. To continue to see his physician or get him the medical attention he needs. |
| [Court:] | Oh, he will. |

[Cavaso:]          I just wanted to say that. I am not sure if that was brought up or not.

[Court:]           Thank you for coming.

[Cavaso:]          We wanted the State to seek if [possible] his medical attention either at his house or leniency like probation or some kind of house arrest or something to where he can continue to seek medical attention.

[Court:]           That's not going to happen.

Contrary to Melendez's testimony at the evidentiary hearing (Doc. 10-5 at 175), the sentencing judge did not state that Melendez "was going to have some of the best doctors in prison that were going to look after [him]." Also, the jury found Melendez guilty of trafficking in illegal drugs (Doc. 10-2 at 179), and Melendez faced a three-year mandatory minimum prison term. § 893.135(1)(c)(1)(a), Fla. Stat. The sentencing judge accurately responded to his brother's request for probation by stating, "That's not going to happen." (Doc. 10-2 at 185) The sentencing judge could not have lawfully imposed a sentence less than three years in prison. Because Melendez failed to objectively demonstrate the probability of actual bias, the post-conviction court did not unreasonably deny the claim. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.'") (quoting *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 881 (2009)).

Melendez exercised his right to allocute at sentencing, and the sentencing judge responded as follows (Doc. 10-2 at 187–88):

[Court:]           Is there anything that you would like to say, Mr. Melendez?

| [Melendez:] | Your Honor, I didn't do it, Your Honor. |
| [Court:] | You didn't do it? |
| [Melendez:] | I didn't do it, sir. Please I will take the three years, but I didn't do it, sir. |
| [Court:] | Okay. That makes it easier for me. Anything else? |
| [Melendez:] | Yes, sir. I don't know what to say. |

At the time of Melendez's sentencing, state law prohibited a judge from considering lack of remorse, even if the defendant voluntarily exercised his right to allocute at sentencing and maintained his innocence. *See Bracero v. State*, 10 So. 3d 664, 665 (Fla. 2d DCA 2009).[2] Even so, Melendez's begged the sentencing judge, "Please I will take the three years, but I didn't do it, sir." (Doc. 10-2 at 188) The sentencing judge responded, "Okay. That makes it easier for me." Reasonable counsel could have interpreted the sentencing judge's comment either as a comment on Melendez's claim of innocence or as a response to Melendez's acceptance of a prison sentence.

Under state law, "'[w]here a statement made by the trial court can **reasonably be read only as conditioning the sentence**, at least in part, **upon appellant's claim of innocence**, fundamental error occurs.'" *Strong v. State*, 263 So. 3d 199, 200 (Fla. 5th DCA 2019) (bolding added). *See also Williams v. State*, 164 So. 3d 739, 740 (Fla. 2d DCA 2015) ("When a sentencing court **expressly** considers the improper factors of a defendant's assertions of innocence and refusal to admit guilt, the truthfulness of his testimony, or the

---

[2] The state supreme court recently held that "when a defendant voluntarily chooses to allocute at a sentencing hearing, the sentencing court is permitted to consider the defendant's freely offered statements, including those indicating a failure to accept responsibility." *Davis v. State*, 332 So. 3d 970, 978 (Fla. 2021).

failure to show remorse, fundamental error and a denial of due process occur.") (bolding added).

Also, under *Strickland*, "because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that **no competent counsel** would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (bolding added). *Strickland*, 466 U.S. at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

Because trial counsel could have reasonably interpreted the sentencing judge's comment as a response to Melendez's acceptance of a prison sentence and the transcript (Doc. 10-2 at 182–88) supports a finding that the sentencing judge did not rely on Melendez's lack of remorse to impose a harsher sentence, a motion to disqualify the sentencing judge would not have succeeded, and the post-conviction court did not unreasonably deny the claim.

Ground Three is **DENIED**.

**Ground Four**

Melendez asserts that trial counsel was ineffective for not investigating and obtaining a recording of a controlled telephone call by the confidential informant who arranged the drug sale. (Doc. 1 at 10) The post-conviction court denied the claim as follows (Doc. 10-5 at 223–25) (state court record citations omitted)[3]:

---

[3] Melendez failed to raise this claim in his brief on post-conviction appeal (Doc. 10-5 at 297–329) and therefore failed to exhaust his remedies in state court. However, the Respondent

. . . Defendant alleges that his counsel was ineffective for failing to obtain a copy of the controlled call between the confidential informant and an individual named "A.J." Defendant contends that the confidential informant set up the drug transaction with "A.J." during this phone call. Defendant contends that Detective Dixon testified that Defendant was the individual named "A.J." Defendant contends that had his counsel retrieved a copy of this phone call it would have revealed that it was not Defendant on the phone with the confidential informant. Defendant contends that had his counsel obtained this audio recording and presented it to the jury it is likely that it would have given the jury a strong reasonable doubt as to Defendant's guilt.

After reviewing the allegations, the court file, and the record, the Court found that Defendant had presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's allegations. In its September 6, 2016 Response, the State argued the controlled call that Defendant references was not recorded. Additionally, the State relied on testimony from Detective Dixon at trial that Defendant brokered the drug deal, suggesting that this testimony would have contradicted the recorded phone call if it had been introduced. The State argued that because of these things Defendant is unable to prove he was prejudiced by his counsel's failure to procure this recording. The Court found, however, that Defendant's claims were still not conclusively refuted by the record. Accordingly, the Court granted an evidentiary hearing on [the claim].

At the evidentiary hearing, Ms. Craig testified that she did discuss this phone call with Defendant and informed him that it had not been recorded.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

---

expressly waives that defense by conceding that Melendez exhausted his remedies in state court. (Doc. 10 at 6) *Vazquez v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 964, 966 (11th Cir. 2016).

> The Court finds that Defendant failed to present any evidence
> at the hearing that this recording exists. Additionally, based on
> Ms. Craig's credible testimony, she discussed this phone call
> with Defendant pre-trial and explained to him that it was not
> recorded. As such, Defendant cannot satisfy the deficiency
> prong of *Strickland*. Accordingly, [the claim] must be denied.

The post-conviction court found trial counsel credible at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. At the evidentiary hearing, trial counsel testified that she discussed with Melendez the telephone call, as follows (Doc. 10-5 at 266–67):

> [Prosecutor:]      Did you and Mr. Melendez ever discuss a
> telephone call that was made between a
> man named A.J., and I'm using A.J. in
> quotes, who we later learned was Mr.
> Melendez with an informant or an
> undercover [officer] from the
> Hillsborough County Sheriff's Office?
>
> [Trial counsel:]   Yes.
>
> [Prosecutor:]      Okay. Did you discuss the fact with Mr.
> Melendez that [the] phone call was made
> and just — and not recorded?
>
> [Trial counsel:]   Yes.
>
> [Prosecutor:]      Okay. During the trial, do you recall if
> that recording was ever introduced into
> evidence?
>
> [Trial counsel:]   There was no recording.

At the evidentiary hearing, Melendez did not introduce into evidence a recording of the telephone call. By not introducing into evidence the recording, Melendez failed to prove deficient performance and prejudice under *Strickland*. Because Melendez "'bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail,'" the post-conviction court did not unreasonably

deny the claim. *Morris v. Sec'y, Fla. Dep't Corrs.*, 677 F.3d 1117, 1128 (11th Cir. 2012) (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001)). *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."). *Accord McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1367 (11th Cir. 2021) ("[S]peculative testimony like [the petitioner's] — about what another person would have said and his or her availability and willingness to say it — may not be sufficient by itself to establish prejudice, regardless of its admissibility.").

Ground Four is **DENIED**.

**Ground Five**

Melendez asserts that trial counsel was ineffective for not investigating and presenting at trial a prescription defense. (Doc. 1 at 12) The post-conviction court denied the claim as follows (Doc. 10-5 at 225–26) (state court record citations omitted):

> . . . Defendant alleges trial counsel was ineffective for not pursuing a prescription defense within a pretrial motion to dismiss or as a defense at trial or requesting a jury instruction on the prescription defense. Defendant contends that he informed his counsel prior to trial that he was in possession of a legal prescription for oxycodone at the time of the incident. Defendant contends the prescription was issued for back injuries that caused him "pain, neuropathy, and partial paralysis, which required constant medical care and prescribed pain medication." Defendant further contends that he told his counsel prior to trial that his co-defendant had been staying with him and had access to Defendant's medication.
>
> After reviewing the allegations, the court file, and the record, the Court found that Defendant had presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's allegations. In its September 6, 2016 Response, the State argued that a prescription defense would have failed based on the fact that a person cannot sell their valid

prescription drugs. The Court found, however, that Defendant's claims were still not conclusively refuted by the record. Accordingly, the Court granted an evidentiary hearing on [the claim].

At the evidentiary hearing, Defendant testified that he told Ms. Craig he had a prescription for the oxycodone and that she told him she was going to call and verify the prescription.

Ms. Craig testified that Defendant did make her aware of his prescription for oxycodone and that she did follow up on verifying his prescription. However, Ms. Craig testified that she explained to Defendant that the prescription defense was not an option for him.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

After further review of the record, the Court finds that the State presented evidence that Defendant gave his bottle of oxycodone to his codefendant, Christopher Simpson, and instructed him to take the pills to a gray Cadillac that was in the supermarket parking lot and to give the pills to a man in the car who would later give Defendant money for them. Additionally, Detective Dixon testified that on the day of the incident he came to the supermarket parking lot because a person that had only been identified to him as A.J. wanted to meet and sell him 102 oxycodone pills. Detective Dixon further testified that he observed Defendant instruct Mr. Simpson to give the pills to Detective Dixon. Detective Dixon testified that at that time he flashed a sum of money at Defendant and after Defendant confirmed all the pills were there Detective Dixon initiated the bust. As such, the Court finds that the State's theory of trafficking and conspiracy to traffic in this case was based on the sale or delivery of the oxycodone not the mere possession of it. As such, the Court finds that the prescription defense would not have been a viable defense for Defendant. Therefore, the Court finds that Ms. Craig was not deficient for failing to raise this defense. Accordingly, [the claim] must be denied.

26

Whether Melendez could have asserted a viable prescription defense in a pretrial motion or at trial is an issue of state law, and a state court's determination of state law receives deference in federal court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Florida Standard Criminal Jury Instruction 3.6(n) (bolding added), the standard instruction for the prescription defense, states:

> It is a defense to the charge of [possession] [**trafficking via possession**] for a person to possess a controlled substance which [he] [she] lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice.

The information charged Melendez with trafficking in illegal drugs and conspiracy to traffic in illegal drugs. (Doc. 10-2 at 12–14) The information alleged that Melendez "did knowingly, unlawfully, and feloniously **deliver** or be in actual or constructive possession of . . . oxycodone," and "did knowingly agree, conspire, or confederate . . . to commit a felony, to wit: trafficking in illegal drugs . . ., that is to say, to **deliver** or be in actual or constructive possession of . . . oxycodone." (Doc. 10-2 at 13) (bolding added)

At trial, the trial judge instructed the jury that the prosecution carried the burden to prove that Melendez "knowingly delivered or possessed" oxycodone (Doc. 10-2 at 159) and "conspired or confederated with Mr. Simpson to cause the trafficking in illegal drugs by either of them or one of them or even by some other person." (Doc. 10-2 at 163) The trial judge further instructed the jury on principal liability as follows (Doc. 10-2 at 161):

> [Court:]        If the defendant helped another person or persons attempt to or commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if he had a conscious intent that the criminal act be

> done and he did some act or said some word which was attended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.

Evidence at trial proved that Melendez delivered a bottle containing 105 oxycodone pills to Simpson and instructed Simpson to deliver the bottle of pills to the undercover detective. The undercover detective heard Melendez instruct Simpson to give the bottle of pills to the detective and observed Simpson enter the undercover detective's car and give the bottle of pills to the detective. (Doc. 10-2 at 70) The undercover detective opened the bottle, asked Simpson if the bottle contained all the pills, and flashed some money. (Doc. 10-2 at 70) Simpson confirmed that the all the pills were in the bottle. (Doc. 10-2 at 70)

The information charged Melendez with unlawfully possessing or delivering the oxycodone. (Doc. 10-2 at 12–14) At the evidentiary hearing, Melendez presented no evidence that he was a pharmacist or doctor who could have lawfully delivered the bottle of pills to the undercover detective. If a doctor had prescribed Melendez the pills, Melendez could have lawfully possessed the bottle of pills but could not have lawfully delivered the bottle of pills for money. *See* § 893.13(9), Fla. Stat. (excluding from prosecution a pharmacist or doctor who lawfully possesses and delivers a controlled substance). *O'Hara v. State*, 964 So. 2d 839, 847 (Fla. 2d DCA 2007) ("[S]ection 499.03 and section 893.13 allow a person to legally possess either a legend drug or a controlled substance when the drug was obtained pursuant to a valid prescription. These statutes apply even when a person possesses a trafficking amount of hydrocodone."). *Celeste v. State*, 79 So. 3d 898, 899–900 (Fla. 5th DCA 2012) ("Mr. Celeste presented the trial court with evidence that he had a valid prescription for his pills, a fact that the State does not dispute. Consequently, under these circumstances,

in order to survive a judgment of acquittal, the State had to prove that Mr. Celeste either knowingly sold or delivered oxycodone.").

Because Melendez failed to demonstrate both deficient performance and prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim. *Roberts v. Comm'r, Ala. Dep't Corrs.*, 677 F.3d 1086, 1092 (11th Cir. 2012) ("The appropriate prejudice analysis for this claim would require the state court to consider whether there is a reasonable probability that Roberts's trial would have resulted in his being found not guilty by reason of insanity had his trial counsel properly investigated and presented an insanity defense."); *Williams v. Allen*, 598 F.3d 778, 790 (11th Cir. 2010) ("To overcome the strong presumption 'in favor of competence, Williams must bear the heavy burden that no competent counsel would have taken the action that his counsel did take.' We have said before that '[c]ounsel must be permitted to weed out some arguments to stress others and advocate effectively.'") (citations omitted).

Ground Five is **DENIED**.

Accordingly, it is **ORDERED** that Melendez's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Melendez and **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Melendez neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on July 22, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE